2005 VT 8

### Gary GINTOF v. HUSKY INJECTION MOLDING

[868 A.2d 713]

No. 04-297

¶ 1. January 19, 2005. Claimant Gary Gintof appeals a ruling by the Commissioner of Labor and Industry, denying him workers' compensation maintenance benefits while attending a vocational rehabilitation program. Claimant argues that the statute provides these benefits and the Commissioner abused his discretion in denying them. We affirm.

¶ 2. Claimant was injured while working as an employee of appellee, Husky Injection Molding System (Husky). Following the injury, claimant could not work at his former machinist job, and his vocational counselor recommended that he attend a two-year degree program at Vermont Technical College (VTC) that would return claimant to 80% of his pre-injury weekly wage. Claimant asserted that he could not attend the program unless he received monetary maintenance because he was the sole financial provider for his family. Husky disputed that Vermont law provides this type of benefit.

¶ 3. The legal issue was submitted to the Commissioner, who concluded that the Vermont Workers' Compensation Act does not provide a stipend or household maintenance award as part of a vocational rehabilitation plan for a claimant who has reached medical end result and is within commuting distance from home. The Commissioner noted that, although the workers' compensation statute is to be liberally construed, it allows commuting and boarding expenses only for those claimants residing away from their customary residence. Therefore, the Commissioner concluded that the Legislature intended to compensate only those claimants who have to maintain two residences, and denied claimant's request.

¶ 4. "[W]e will affirm the Commissioner's decision if his 'conclusions are rationally derived from the findings and based on a correct interpretation of the law.'" *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 218, 762 A.2d 1248, 1252-53 (2000) (quoting *Pacher v. Fairdale Farms*, 166 Vt. 626, 627, 699 A.2d 43, 46 (1997) (mem.)). We will also defer to the Commissioner's construction of the Workers' Compensation Act, "absent a compelling indication of error." *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999). Here, the parties stipulated to the relevant facts, and the question certified to the Commissioner involved only an interpretation of law.

¶ 5. The vocational rehabilitation statute allows employees who are unable to perform their previous work to receive "vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore the employee to suitable employment." 21 V.S.A. § 641(a). The statute further stipulates that "[w]hen vocational rehabilitation requires residence at or near a facility or institution, away from the employee's customary residence, the reasonable cost of board, lodging, or travel,

or both, shall be paid for by the employer." *Id.* § 641(a)(4).

¶ 6. Claimant argues that the term "vocational rehabilitation services" as used in the statute should be broadly construed to include maintenance payments for items such as rent, utilities, food and other necessities to claimants attending training programs. Claimant relies on the federal rehabilitation act's broad definition of "vocational rehabilitation services" to support his argument that money for essential items is included if necessary to retrain a claimant. 29 U.S.C. § 723(a) (including as rehabilitation services anything "necessary to assist an individual with a disability in preparing for, securing, retaining, or regaining ... employment"); see also 34 C.F.R. § 361.5(b)(35) (defining maintenance as "monetary support provided to an individual for expenses, such as food, shelter, and clothing ... that are necessitated by ... the individual's receipt of vocational rehabilitation services"). Stressing the remedial purposes of the workers' compensation statute, claimant argues that denying support for essential items would prevent him from completing his education and therefore contradict the rehabilitation statute's overall purpose of returning employees to gainful employment.

¶ 7. We find that claimant's interpretation of the statute is overly broad and affirm the Commissioner's decision that the Legislature did not intend to provide benefits for lodging and board to those individuals who do not have to live away from their customary residence. This interpretation flows from the plain meaning of the statute. See *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999) (reiterating that our overall goal in statutory interpretation is to give effect to the legislative intent and we do this primarily by looking at the plain meaning). "If legislative intent is clear, the statute must be enforced according to its

terms without resorting to statutory construction." *Id.* We will not read benefits into the statute that were not provided by the Legislature. See *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331, 817 A.2d 9, 13 (2002) ("In general, we will not read provisions into the statute that are not present unless it is necessary in order to make the statute effective.").

¶ 8. The Legislature specifically denoted that those attending vocational rehabilitation programs away from their regular residence should receive compensation for "the reasonable cost of board, lodging, or travel, or both." 21 V.S.A. § 641(a). Claimant argues that although the Legislature did not include benefits for those residing in their customary residence, this omission does not indicate an intent not to provide these benefits. We find that this argument ignores the plain meaning of the statute. Although we recognize that the workers' compensation statutes are remedial and are broadly construed, we also note that neither we, nor the Commissioner, has the ability to expand benefits beyond those provided by the Legislature. Even claimant admits that "[t]he Legislature creates the rights to benefits, the Commissioner is given authority to adopt rules necessary to carry out the purpose of the statute." The Commissioner "may adopt rules necessary to carry out the purpose of [the vocational rehabilitation] section," 21 V.S.A. § 641(c), but cannot expand benefits. The Legislature could have provided this benefit and chose not to do so.

¶ 9. Our interpretation is consistent with our previous decisions regarding vocational rehabilitation and the policy behind the statute. In *Wroten v. Lamphere*, we held that the statutory scheme did not entitle a claimant to receive temporary total disability for the duration of a vocational rehabilitation program. 147 Vt. 606, 610-11, 523 A.2d 1236, 1238-39 (1987). We noted in *Wroten* that although the statute allows claimants to collect permanent benefits while attending such programs, temporary benefits are not tied to continued participation in a rehabilitative program. Indeed, if this were true, it would act as a disincentive to return to work — the overall goal of workers' compensation. *Id.* We similarly find that the limited compensation for lodging and board is designed to compensate individuals for the cost of maintaining a second residence, not to support a claimant's regular household. Participation in vocational rehabilitation is voluntary, and the Legislature provides some benefits to encourage claimants to attend. The limited purpose of this benefit cannot be extended, however, into a general living allowance for anyone participating in vocational rehabilitation. *Elkins*, 174 Vt. at 331, 817 A.2d at 13 ("[L]iberal construction does not allow us to stretch the language beyond legislative intent."). Therefore, we conclude that the Commissioner's decision that claimant is not entitled to household maintenance while attending vocational rehabilitation was reasonable, and we will not disturb it.

*Affirmed.*