2005 VT 5

# Charles Farris v. Bryant Grinder Corporation/Wausau Insurance Company v. Bryant Grinder Corporation/AIG Insurance Company

[869 A.2d 131]

No. 03-516

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed January 14, 2005

*Joshua L. Simonds* of *Mertz, Talbott & Simonds, PLC,* Burlington, for Defendant-Appellant.

*John W. Valente* and *John A. Serafino* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Defendant-Appellee.

¶ 1. **Dooley, J.** This appeal involves a dispute between two insurance companies as to which one should pay workers' compensation benefits for an injury to Bryant Grinder Corporation (Bryant Grinder) employee Charles Farris. Appellant, Wausau Insurance Company (Wausau), appeals a superior court jury determination that Farris suffered a recurrence of a previous injury and therefore that it was liable instead of AIG Insurance Company (AIG), successor to Wausau and insurer at the time of Farris's later injury. On appeal, Wausau argues that the superior court erred by failing to: (1) allocate a burden of proof to one of the parties; (2) reformulate the certified question into five separate interrogatories; and (3) provide a specific jury instruction on the last injurious exposure rule. We find that although failure to

allocate a burden of proof was error, it was harmless, and the jury instructions were otherwise within the court's discretion. We affirm.

¶ 2. Charles Farris began working for Bryant Grinder in July 1973, a year after he first had surgery on his right knee in May 1972. He again injured his right knee in April 1991 when he slipped on some oil at work. Farris received medical treatment for this injury, including surgery, and was out of work for fifteen months. He received workers' compensation benefits from Wausau, which insured Bryant Grinder from May 1989 to May 1992. Farris returned to work, and the condition of the knee deteriorated to the point where he again had surgery in 1993. Although after nine months Farris returned to work for Bryant Grinder, the condition of his knee continued to worsen until he had another operation in December 1996. He did not return to work after this operation.

¶ 3. Bryant Grinder had three different insurance carriers during the period between the end of the Wausau coverage in 1992 and Farris's 1996 surgery. Only the last carrier, AIG, is involved in this action. It began to insure Bryant Grinder in May 1995. Despite the new carriers, Wausau continued to pay Farris workers' compensation benefits through the 1996 surgery and thereafter. In January 1998, it received an opinion from an orthopedic doctor that Farris's "degenerative arthritis of the right knee is aggravated and probably accelerated by his type of work which places excess stress across the knee through the work day." Based on that opinion, Wausau filed a "Notice of Intention to Discontinue Payments" pursuant to 21 V.S.A. § 643a, on the ground that Farris's current condition "should be current carrier's responsibility." This led to a proceeding before the Commissioner of Labor and Industry to determine whether Wausau or AIG was responsible for payments to Farris.[1]

¶ 4. Generally, when two employers or insurers dispute liability for a workers' compensation claim arising out of successive injuries, the liability remains with the first insurer or employer if the second

---

[1] The record the Commissioner supplied is incomplete and does not contain the action, if any, taken in response to Wausau's notice. The procedural posture was further complicated by another notice to discontinue benefits, also filed in January 1998, alleging that Farris had reached a medical end result and temporary partial disability benefits were no longer appropriate. It was additionally complicated by the filing of a new claim that Farris was partially disabled as a result of injury to his *left* knee and the onset of carpal tunnel syndrome. Responsibility for these additional injuries is not part of this appeal.

injury is a recurrence of the first. *Pacher v. Fairdale Farms*, 166 Vt. 626, 627, 699 A.2d 43, 46 (1997) (mem.). "If, however, the second incident aggravated, accelerated, or combined with a preexisting impairment or injury to produce a disability greater than would have resulted from the second injury alone, the second incident is an 'aggravation,' and the second employer becomes solely responsible for the entire disability at that point." *Id.* at 627-28, 699 A.2d at 46. In September 2000, the Commissioner concluded that Farris's injury was an aggravation and, therefore, that AIG was responsible for the benefits related to the 1996 injury and should reimburse Wausau. AIG appealed the decision to superior court pursuant to 21 V.S.A. § 670[2] and requested a trial by jury. The Commissioner's certified question was: "Did the claimant suffer an aggravation or a recurrence of his pre-existing osteoarthritis after AIG began to insure Bryant Grinder." The jury found that the injury was a recurrence, leaving Wausau responsible.

¶ 5. Wausau first argues that the superior court erred in not allocating a burden of proof between the parties. Before trial, the court discussed with the attorneys what burden of proof should be applied. AIG argued that since Wausau was attempting to relieve itself of the obligation to pay, it bore the burden of proof. AIG also advanced a theory that both parties were trying to relieve themselves of liability, and that neither bore the burden of proof. Wausau argued that AIG had the burden because the Commissioner had ordered AIG to reimburse Wausau and AIG was attempting to relieve itself of this responsibility. The court instructed that it would not allocate a burden of proof to either party, finding that "the cross burdens cancel each other out." Instead the jury instructions charged the jurors to "consider which party has made a case that is stronger than the other party's case."

¶ 6. On appeal, Wausau argues that 21 V.S.A. § 662(c) controls and allocates the burden of proof to AIG. We agree with Wausau that the statute is determinative of the burden of proof in this case.

---

[2] Wausau has not contested AIG's right to appeal under 21 V.S.A. § 670, and thus we do not consider whether the Commissioner's decision under § 662(c) can be considered an award for purposes of § 670. See also 21 V.S.A. § 671 (order on review shall be treated as an award made pursuant to §§ 663, 664 and 665).

¶ 7. Section 662(c) provides in pertinent part:

> Whenever payment of a compensable claim is refused, on the basis that another employer or insurer is liable, the commissioner, after notice to interested parties and a review of the claim, but in no event later than 30 days, shall order that payments be made by one employer or insurer until a hearing is held and a decision is rendered. For the purposes of this review, the employer or insurer at the time of the most recent personal injury for which the employee claims benefits shall be presumed to be the liable employer or insurer and shall have the burden of proving another employer's or insurer's liability.

It is undisputed that if this statute applies, AIG had the burden of proving Wausau was liable because AIG was the insurer "at the time of the most recent personal injury." *Id.* AIG argues that the statute does not apply for two reasons: (1) the statute is intended for the situation where two insurers are disputing payment and the claimant is receiving no benefit, a situation not applicable here; and (2) the statutory language refers to proceedings before the Commissioner, not a trial de novo in the superior court. We find AIG's attempts to distinguish the statute unpersuasive.

¶ 8. The overall goal in statutory interpretation is to implement the Legislature's intent. We will first look to the statute's terms and apply the plain language if it is unambiguous. *Sagar v. Warren Selectboard*, 170 Vt. 167, 171, 744 A.2d 422, 426 (1999). In addition, we look to the statute as a whole and "its consequences and effects to reach a fair and rational result." *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999).

■ ¶ 9. We do not believe that the statutory language supports either of AIG's arguments. As to the first, § 662(c) is triggered if "payment of a compensable claim is refused, on the basis that another . . . insurer is liable." The trigger applied to the facts of this case. By its notice, Wausau refused to keep paying on Farris's claim because it alleged that AIG was responsible for such payments. Nothing in the language of the statute suggests it is inapplicable if the insurer that refuses payment had paid in the past. Indeed, under AIG's construction, no insurer should pay voluntarily pending an allocation decision of the Commissioner because the voluntary payment would then prevent assignment of the burden of proof to the opposing insurer. This result would run afoul of the last sentence of § 662(c) that provides "[p]ay-

ments pursuant to this subsection shall not be deemed an admission . . . of an . . . insurer's liability . . . or prejudice the rights of either party to a hearing or appeal . . . ." Even without this protective language, it is difficult to understand what the willingness to extend voluntary payments pending determination of an allocation dispute has to do with proper assignment of the burden of proof.

¶ 10. We also reject AIG's second argument that § 662 does not apply where the Commissioner's allocation decision is appealed to the superior court. In doing so, we recognize that the statutory language applies explicitly to the Commissioner's "review" and does not mention any appeal. Nevertheless, the burden of proof is linked to review of the subject matter — resolving which insurer is liable — not where the hearing is held. Superior court review of the Commissioner's decision involves a "retrial de novo." *Sivret v. Knight*, 118 Vt. 343, 350, 109 A.2d 495, 499 (1954). Therefore, the superior court is determining the certified questions in the same posture as the Commissioner. It would make no sense to apply a different burden of proof in the superior court. Although we have not yet decided this question, many other courts have, and the weight of authority is that the burden of proof applicable in the first level proceeding is also applicable in the de novo review proceeding. E.g., *Sch. Dist. of Erie v. Hamot Med. Ctr.*, 602 A.2d 407, 409 (Pa. Cmmw. Ct. 1992); *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 182 (Tenn. 1987); *Attorney Gen. of Texas v. Orr*, 989 S.W.2d 464, 467 (Tex. App. 1999). We see no reason not to follow these decisions.

¶ 11. We hold that § 662(c) required the superior court to assign the burden of proof to AIG, and the court erred in charging the jury that neither party bore that burden. Nevertheless, we find that this error was harmless. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." V.R.C.P. 61. Furthermore, appellant bears the burden of demonstrating that a trial court error resulted in prejudice. *Corti v. Lussier*, 140 Vt. 421, 424, 438 A.2d 1114, 1116 (1981).

¶ 12. The court charged the jury to "consider which party has made a case that is stronger than the other party's case." We presume that the jury followed the trial court's instructions. *Claude G. Dern Elec., Inc. v. Bernstein*, 144 Vt. 423, 427, 479 A.2d 136, 139 (1984). The

jury found that Farris had suffered a recurrence of the injury that occurred when Wausau was the insurer. In order to so find under the court's instructions, the jury must have concluded that AIG had a stronger case than Wausau. Therefore, Wausau could not have been prejudiced by the court's failure to instruct that AIG bore the burden of proof. The burden could have been determinative only if the jury found that the persuasive effect of each party's case was equal. The jury did not conclude there was an even match; it found that AIG had a stronger case. As a result, we find the error in the assignment of the burden of proof was harmless.

¶ 13. Wausau next argues that the court erred by not using a special interrogatory jury form. Wausau's request was based on its position that the jury should be required to analyze the recurrence versus aggravation question in light of five factors that the Commissioner has routinely used and used in this case. The factors are: (1) whether the subsequent incident or work condition destabilized a previously stable condition; (2) whether the claimant had stopped medical treatment; (3) whether the claimant had successfully returned to work; (4) whether the claimant had reached a medical end result; and (5) whether the subsequent work contributed to the disability. None of our decisions adopt this list of factors or require that they be used. In its proposed instructions, Wausau requested that the jury be required to answer whether each of these factors was present. Further, it requested that if the answer to each was "yes" that the jury be instructed to return a verdict for Wausau, if the answer to each was "no" that the jury be instructed to return a verdict for AIG, and if the answers were mixed that the jury be instructed to use the answers as guidance.

¶ 14. In its instructions, the court listed the five factors and explained that the jury should consider them in determining whether Farris suffered an aggravation or a recurrence. The court also adopted Wausau's view that if all the factors supported its position, or that of AIG, the jury had to render a verdict for the party supported by the factors. It added: "If the results are mixed, then you must weigh and balance the different factors in reaching an overall decision." Thus, the court fully adopted Wausau's request, except that it did not require the jury to specify which factors supported which party on an interrogatory form.

¶ 15. The trial court has broad discretion in fashioning jury verdict questions and deciding whether to employ interrogatories. See V.R.C.P. 49(b) (court "may submit" interrogatories in addition to a general verdict form); *Hardwick-Morrison Co. v. Albertsson*, 158 Vt.

145, 152, 605 A.2d 529, 533 (1992). Although we have encouraged the use of special interrogatories in cases of "overlapping and multiple theories of liability," we have held that even in such cases use of interrogatories is optional. *Id.*; accord *English v. Myers*, 142 Vt. 144, 150, 454 A.2d 251, 254 (1982). This was not a case of multiple theories of liability. The court acted well within its discretion in refusing to submit interrogatories to the jury.

■ ¶ 16. Finally, Wausau argues that the court should have instructed the jury that responsibility for workers' compensation payments should be assigned to the insurer that covered the employer during the employee's last injurious exposure, and not by determining whether the employee suffered a recurrence or an aggravation. The last injurious exposure rule may be appropriate where there are separate injuries that all causally contribute to a disability so that it is difficult to allocate liability among several employers or insurers. *Pacher*, 166 Vt. at 628 n.2, 699 A.2d at 47 n.2. We explained in *Pacher*, however, that where "different accidents produce distinct injuries, the Commissioner can fairly define and apportion the liability of each employer, without confusion to either employers or employees." *Id.* (citing 21 V.S.A. § 662(c)). Since then we have reiterated that the Commissioner is not required to use the last injurious exposure rule in cases involving apportionment of liability between insurers. *Ethan Allen, Inc. v. Bressett-Roberge*, 174 Vt. 518, 520, 811 A.2d 171, 172 (2002) (mem.). As we explained in *Stannard v. Stannard Co.*, 2003 VT 52, ¶ 11, 175 Vt. 549, 830 A.2d 66 (mem.), when evaluating successive injuries related to a degenerative disease, the pivotal question is whether the disability occurred earlier than it would have without the second injury. As in *Stannard*, the last injurious exposure rule is not applicable in this case, and the trial court did not err in not giving such an instruction to the jury.

*Affirmed.*