2006 VT 12

**Ramiz CEHIC v. MACK MOLDING, INC.**

[895 A.2d 167]

No. 04-353

¶ 1. January 13, 2006. Mack Molding, Inc. appeals from the Commissioner of Labor and Industry's decision that it is responsible for paying workers' compensation benefits for its former employee, claimant Ramiz Cehic. The Commissioner, after a contested hearing, concluded that a 1998 injury claimant incurred while employed at Mack Molding, rather than a more recent 2001 lifting incident at a subsequent employer, Pike Industries, was responsible for claimant's continued impairment and need for back surgery in 2002. On appeal, Mack Molding argues that the Commissioner erred in considering the later lifting incident as a temporary flare-up of a preexisting condition, instead of analyzing the incident as an "aggravation" of a preexisting injury, for which the latest employer would be responsible, or a "recurrence" of an old injury, for which Mack Molding would remain liable. Alternatively, Mack Molding argues that this Court should abandon the current aggravation-or-recurrence analysis and, instead, adopt a bright-line rule that the employer at the time of the last injurious exposure is always liable. We affirm.

¶ 2. Claimant was employed by Mack Molding in 1998 when he injured his back in a lifting incident, suffering a herniated disc in his spine, an injured facet joint, and strained lower lumbar muscles. In 1999, as a result of the injury, claimant had surgery on his spine, which removed part of the facet joint and large amounts of disc material. After the surgery, claimant continued to experience pain, worked part-time for a while, and was gradually released by his doctor to work full-time, but with lifting restrictions. In May 2000, while his workers' compensation claim against Mack Molding was still under adjustment, claimant began work at Pike Industries, a New Hampshire employer. In November 2000, Mack Molding sent claimant to an orthopedic surgeon, who determined that claimant had reached a medical end result for the 1998 injury, with persistent back and leg pain and a permanent disability amounting to a ten-percent impairment of the whole person.

¶ 3. Eight months later, on July 31, 2001, after lifting a pipe at Pike Industries, claimant experienced back pain and leg numbness and sought medical treatment. Claimant missed some time from work, engaged in physical therapy, and returned to full-time work by September or October of 2001. Claimant was laid off from Pike Industries on January 4, 2002. Shortly thereafter, claimant underwent a surgical fusion of his lower lumbar vertebrae. Claimant first filed a workers' compensation claim with the New Hampshire Department of Labor, which determined that Pike Industries was not responsible.

¶ 4. Claimant next filed for workers' compensation in Vermont against Mack Molding. Mack Molding denied coverage, contending that it was not answerable for the pipe-lifting episode at Pike, since it was not a recurrence of the Mack Molding injury, but an aggravation of that injury while in Pike's employ. At the time of the hearing in 2004, claimant had not resumed employment. After a contested hearing, the Commissioner concluded that the back pain and numbness incurred in July 2001 at Pike was a "flare-up" for which Mack Molding was not

responsible. The Commissioner determined the flare-up prompted claimant to seek medical treatment, but did not alter claimant's underlying condition remaining from his earlier accident at Mack Molding. The Commissioner further determined, however, that once claimant's condition returned to his pre-Pike-injury "baseline" in late September or October 2001, Mack Molding continued to be liable for benefits due on account of claimant's underlying condition. See *Pacher v. Fairdale Farms*, 166 Vt. 626, 629, 699 A.2d 43, 47 (1997) (mem.) (describing "baseline" as achieved when a claimant reaches the condition he or she was in prior to the subsequent, distinct injury).

¶ 5. The Commissioner based his conclusion on opinions from three medical experts, including one hired by Mack Molding, that the Pike incident changed nothing in claimant's underlying condition from his earlier injury at Mack Molding. Two of the experts related the need for fusion surgery to the earlier Mack Molding injury. Two of the experts opined that claimant returned to his pre-Pike-injury baseline four months before the 2002 surgery. That claimant's condition never stabilized after the earlier injury was further supported by medical indications that he still had pain and could work only with lifting restrictions. Notwithstanding an opinion to the contrary from a fourth medical expert, whose opinion was not supported by the MRI, the Commissioner's conclusion was amply supported by the medical evidence.

¶ 6. Our review in a direct appeal from a decision by the Commissioner of Labor and Industry is limited to questions of law certified by the Commissioner. 21 V.S.A. § 672. We are bound by the Commissioner's findings so long as they are supported by the evidence. *Wroten v. Lamphere*, 147 Vt. 606, 611, 523 A.2d 1236, 1239 (1987). The sufficiency of the findings are considered from a point of view favorable to the award. *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 467 (1996). "[W]e will overrule only where those findings have no evidentiary support in the record or where the decision is based on 'evidence so slight as to be an irrational basis for the result reached.'" *Id.* at 533, 687 A.2d at 467-68 (quoting *Kenney v. Rockingham Sch. Dist.*, 123 Vt. 344, 348, 190 A.2d 702, 705 (1963)). Where the Commissioner's conclusions are "rationally derived from the findings and based on a correct interpretation of the law," we will affirm. *Pacher*, 166 Vt. at 627, 699 A.2d at 46.

¶ 7. The question certified by the Commissioner was whether "a lifting incident at Pike Industries in 2001 or an injury at Mack Molding in 1998 [was] responsible for claimant's current condition, his January 2002 surgery and lost time from work." Mack Molding argues that application of the traditional aggravation-or-recurrence analysis would conclusively result in a determination that claimant's current condition and need for surgery in 2002 resulted from an aggravation at Pike of his preexisting condition. We disagree with Mack Molding's contention that the aggravation-or-recurrence standard was the only applicable theory of liability for categorizing the Pike lifting injury, or that the Commissioner erred by relying on another theory, which was supported by the evidence, in analyzing that injury.

¶ 8. We have stated that where a dispute concerns a compensation claim involving successive employers and successive injuries, liability will remain with the first employer if the second injury is a recurrence of the first. *Farris v. Bryant Grinder Corp.*, 2005 VT 5, ¶ 4, 177 Vt. 456, 869 A.2d 131. "If, however, the second incident aggravated, accelerated, or combined with a preexisting impairment or injury to produce a disability greater

than would have resulted from the second injury alone, the second incident is an 'aggravation,' and the second employer becomes solely responsible for the entire disability at that point." *Pacher*, 166 Vt. at 627-28, 699 A.2d at 46. We have also observed, as in *Pacher*, that at least a third option exists where an incident is neither an aggravation nor a recurrence but causes "a new injury distinct from claimant's prior injuries." *Id.* at 628, 699 A.2d at 46. The Commissioner, relying on *Pacher*, determined that the injury claimant incurred at Pike fell within this third option as "a so-called flare-up."

¶ 9. The Commissioner's melding of a distinctly new injury and condition, as discussed in *Pacher*, with a flare-up may lend more confusion than clarity to the issue. *Pacher* acknowledged that just because a claimant incurs a subsequent injury does not mandate a finding that the injury is either a recurrence or an aggravation; alternatively, a subsequent incident may be an entirely new injury. See *Pacher*, 166 Vt. at 628, 699 A.2d at 46-47 (upholding the Commissioner's conclusion that a later injury during subsequent employment to right lower back was new and distinct from earlier injury, from prior employment, to left lower back and left leg). "Flare-up" most appropriately connotes a temporary worsening of a preexisting disability caused by a new trauma for which the new "employer is responsible for paying compensation benefits until the worker's condition returns to the baseline, and not thereafter." See *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 424, 739 A.2d 1201, 1206 (1999) (summarizing the Commissioner's use of the temporary flare-up doctrine, but finding it inapplicable to the facts of the case). Regardless of the terms employed, the crux of the Commissioner's inquiry in the instant case was whether there was a distinction between the two incidents and their respective effects on claimant's overall condition so as to fairly apportion liability between the successive employers.

¶ 10. The temporary flare-up doctrine, like the aggravation-or-recurrence analysis, rationally serves the Commissioner's obligation to determine, if possible, the relative liability of multiple employers for different and distinct injuries to a worker. See *Pacher*, 166 Vt. at 629 n.2, 699 A.2d at 47 n.2 (noting Commissioner's ability to fairly define and apportion liability of different employers where different accidents produce distinct injuries and obligation to do so pursuant to 21 V.S.A. § 662(c)); see also *Stannard v. Stannard Co.*, 2003 VT 52, ¶ 11, 175 Vt. 549, 830 A.2d 66 (mem.) ("As *Pacher* established, in workers' compensation cases involving successive injuries, the employer/carrier at the time of the first injury remains liable unless the medical evidence establishes that the second injury 'causally contribute[d] to the claimant's disability.'" (quoting *Pacher*, 166 Vt. at 627, 699 A.2d at 46)). "Mere continuation or even exacerbation of symptoms, without a worsening of the underlying disability, does not meet the causation requirement." *Id.* The flare-up rule is not, as urged by Mack Molding, inconsistent with either theory of aggravation or recurrence. In a flare-up, the finding of a distinct new injury, as here, precludes a conclusion that the injury is a recurrence; and, while that new injury temporarily worsens a preexisting condition, the finding of a return to baseline, as here, precludes a conclusion of aggravation because the injury, once resolved, did not "causally contribute" to any increased disability.

¶ 11. The Commissioner's expression of the analysis may be inexact, but we find no error in its application here. Nor do we find unsupported the Commissioner's ultimate conclusion that Mack Molding was not responsible for lost work or medical treatment associated with the 2001 back strain suffered at

Pike, but was responsible for claimant's underlying condition incurred at Mack Molding, which continued, unchanged and unstable, before and after the Pike incident. Although the Commissioner's findings do not indicate that the fusion surgery was specifically prescribed prior to the Pike incident, the opinions of three medical experts support the conclusion that it was the same underlying condition that claimant had prior to the Pike incident that led to the need for the spinal fusion, not the temporary back strain claimant experienced from the Pike injury.

¶ 12. Mack Molding argues that other facts in the record favor a finding of aggravation, but it is not our role to weigh the evidence in the record. Mack Molding was free to seek a new trial on the facts in the superior court and declined to do so. As we previously observed in *Kenney v. Rockingham School District*, in denying the employer's motion for reargument, "[i]f the weight of the evidence seems to a defendant to preponderate in his favor, and the commissioner has decided against him, the defendant's remedy is by appeal to county court pursuant to 21 V.S.A. § 670." 123 Vt. at 348, 190 A.2d at 705. In this direct appeal limited to questions of law, we conclude that the Commissioner's findings and conclusions are supported by evidence, despite some evidence to the contrary, and therefore are not clearly erroneous. See *Stannard*, 2003 VT 52, ¶ 13 (refusing to find error despite some evidence that cut against trial court's findings).

¶ 13. Finally, Mack Molding argues that we should abandon aggravation-or-recurrence analysis in Vermont, together with its flare-up cousin, in favor of the last-injurious-exposure rule to limit liability of a previous employer when a former employee is reinjured while working for a later employer. Mack Molding argues that the aggravation and recurrence standards yield inconsistent,

unpredictable, and unfair results, citing more than thirty decisions by the Commissioner with divergent results that are not subject to review in this appeal. Mack Molding contends that the last-injurious-exposure rule is warranted in cases involving complex issues of causation and multiple employers.

¶ 14. As an initial matter, it does not appear from the record provided that Mack Molding requested that the Commissioner apply the last-injurious-exposure rule in this case. Instead, Mack Molding submitted proposed findings of fact and conclusions of law urging a finding of aggravation. We need not address the propriety of Mack Molding's request that this Court adopt a determinative rule of law where it declined to give the Commissioner the opportunity to consider the matter in the first instance. Even if raised below, the last-injurious-exposure rule would not apply, given the Commissioner's findings of fact.

¶ 15. We have previously recognized that the last-injurious-exposure rule may be appropriate "*only* where separate injuries all causally contribute to the total disability so that it becomes difficult or impossible to allocate liability among several potentially liable employers." *Pacher*, 166 Vt. at 628 n.2, 699 A.2d at 47 n.2 (emphasis supplied). Although the evidence here may have been conflicting and complex, this is not a case where the Commissioner was unable to find what incident caused claimant's condition. Here it was determined from the medical evidence that the Pike lifting incident did not contribute to the disability that required the 2002 surgery. See 9 A. Larson et al., Larson's Workers' Compensation Law § 153.02[7][a], at 153-18 (2004) ("It goes without saying that, before the last-injurious-exposure rule can be applied, there must have been *some* exposure of a kind *contributing to the condition*." (second emphasis supplied)).

¶ 16. To the extent that Mack Molding wants to remove the element of causation in determining multiple employer liability — in the interest of avoiding litigation in cases involving complex and conflicting medical evidence — these are public policy concerns best brought to the attention of the Legislature, or possibly to the regulatory authority of the Commissioner.

¶ 17. For the foregoing reasons, we affirm the Commissioner's decision ordering Mack Molding to adjust the claim for benefits.

*Affirmed.*